**SO ORDERED.**

**SIGNED this 08 day of June, 2007.**

_____
J. Rich Leonard
United States Bankruptcy Judge

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WILSON DIVISION

IN RE:

AERONAUTICAL SOLUTIONS, LLC,

          Debtor.          06-01250-8-JRL
                                  Chapter 11

AERONAUTICAL SOLUTIONS, LLC,

          Plaintiff,

v.                                                     Adversary Proceeding No.
                                                    L-06-00261-8-AP

COMMERCIAL DEBT COUNSELING
CORPORATION d/b/a AMERASSIST, INC.

          Defendant.

_____

## **ORDER**

The matter before the court is the motion to stay adversary proceeding and compel arbitration filed by Commercial Debt Counseling Corporation d/b/a AmerAssist, Inc. ("CDCC"). On May 21, 2007, the

1

court conducted a hearing on this matter in Raleigh, North Carolina.

On October 18, 2004, Aeronautical Solutions, LLC ("Aeronautical") entered into a Debt Mediation and Restructuring Agreement ("the Agreement") with CDCC, whereby CDCC would attempt to mediate, restructure and fully satisfy debts owed to Aeronautical's creditors. The Agreement contains an arbitration clause, which states:

> In the event of any dispute arising under this Agreement, Client and AmerAssist agree to submit the dispute to binding arbitration, which shall be conducted in Columbus, Ohio. AmerAssist and Client will each select one arbitrator and those two arbitrators will select a third arbitrator. The matter or matters shall be decided by a majority vote of the arbitrators, whose decision shall be final and binding on both parties. The fees of the arbitrators shall be shared equally between AmerAssist and Client in such an event.

On April 25, 2006, Aeronautical filed for relief under Chapter 11. On November 22, 2006, Aeronautical filed the subject adversary proceeding against CDCC, asserting claims of fraudulent conveyance, pursuant to 11 U.S.C. §§ 548 and 550, unfair and deceptive trade practices, pursuant to N.C. Gen. Stat. § 75-1.1, and fraudulent conveyance, pursuant to 11 U.S.C. §§ 544 and 550 and N.C. Gen. Stat. § 39-23.1, et seq. CDCC requests the court to stay this adversary proceeding and order the parties to arbitrate under the terms of the Agreement. The parties do not dispute that a valid arbitration clause exists in the Agreement. CDCC points to the Federal Arbitration Act (FAA), which states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (2006). The FAA establishes a federal policy of favoring arbitration. Shearson/American

Exp., Inc. v. McMahon, 482 U.S. 220, 226 (1987). The burden is on the party opposing arbitration to show that Congress "intend[ed] to limit or prohibit waiver of a judicial forum for a particular claim" which intent can be determined from "the statute's text or legislative history . . . or from an inherent conflict between arbitration and the statute's underlying purpose." Id. at 227.  The Fourth Circuit has applied the McMahon test for determining whether waiver of arbitration is permissible in an adversary proceeding involving a Chapter 11 debtor. White Mountain Mining Co., LLC v. Congelton, LLC (In re White Mountain Mining Co.), 403 F.3d 164, 168-70 (4th Cir. 2005). First, the Court of Appeals considered statutory text. Id. Section 157 of Title 28 clearly states:

> (a) Each district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a cause under title 11 shall be referred to the bankruptcy judges for the district.
> (b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.

28 U.S.C. § 157(a)-(b)(1). In White Mountain, the Fourth Circuit concluded that the matter before the court was a core proceeding where the creditor sought a determination as to whether certain advances of funds constituted loans that were "due and owing" to the creditor. White Mountain, 403 F.3d at 169. In the case at bar, the two fraudulent conveyance claims are core proceedings. Section 157(b)(2) clearly states that core proceedings include "proceedings to determine, avoid, or recover fraudulent conveyances." 28 U.S.C. § 157(b)(2)(H).

Rather than focusing on whether the statutory text demonstrates Congressional intent to override arbitration of core claims, the Fourth Circuit focused on the third line of analysis set forth in McMahon-

"whether congressional intent is deducible 'from an inherent conflict between arbitration and the statute's underlying purpose.'" White Mountain, 403 F.3d at 169. The Fourth Circuit concluded that "[a]rbitration is inconsistent with centralized decision-making because permitting an arbitrator to decide a core issue would make debtor-creditor rights 'contingent upon an arbitrator's ruling' rather than the ruling of the bankruptcy judge assigned to hear the debtor's case." White Mountain, 403 F.3d at 169 (quoting Notes, Jurisdiction in Bankruptcy Proceedings: A Test Case for Implied Repeal of the Federal Arbitration Act, 117 HARV. L. REV. 2296, 2307 (2004)). The Fourth Circuit emphasized that "[c]entralization of disputes concerning a debtor's legal obligations is especially critical in Chapter 11 cases" because the main purpose of Chapter 11 is "rehabilitation of the debtor." Id. at 170. The Court of Appeals considered the specific findings of the bankruptcy court that arbitration in London would: "(1) make it very difficult for the debtor to attract additional funding because of the uncertainty as to whether Phillip's claim was debt or equity; (2) undermine creditor confidence in the debtor's ability to reorganize; (3) undermine the confidence of other parties doing business with the debtor; and (4) impose additional costs on the estate and divert the attention and time of the debtor's management . . . ." Id. The Court of Appeals found that the bankruptcy court had not erred in refusing to order arbitration, and it noted that the bankruptcy court's findings confirmed that "arbitration was inconsistent with the purpose of the bankruptcy laws to centralize disputes about a chapter 11 debtor's legal obligations so that reorganization can proceed efficiently." Id. at 170.

     Here, the asset in dispute is the only asset left to be recaptured and redistributed in the Chapter 11 case. Aeronautical has always looked at the asset as a possible source of payment. The court finds that arbitration in Ohio would cause great hardship to Aeronautical, as it is administratively insolvent and has no available funds to pay counsel in Ohio or its share of the substantial costs of the arbitration proceeding.

. Moreover, arbitration in Ohio could cause significant delay in completion of the Chapter 11 case. Considering the third line of analysis in McMahon, the court finds that arbitrating this proceeding involving two core claims is inconsistent with the purpose of bankruptcy laws and specifically the purpose of Chapter 11 to rehabilitate the Chapter 11 debtor and to provide centrality of disputes.

Based on the foregoing, CDCC's motion to stay adversary proceeding and compel arbitration is denied.

END OF DOCUMENT